UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ROBERTA GRIPPON, | : | Case No. 3:11-cv-81 |
| | : | |
| Plaintiff, | : | Judge Timothy S. Black |
| | : | |
| vs. | : | |
| | : | |
| COMMISSIONER OF | : | |
| SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | : | |

**ORDER THAT: (1) THE ALJ'S NON-DISABILITY FINDING IS FOUND NOT
SUPPORTED BY SUBSTANTIAL EVIDENCE, AND REVERSED;
(2) JUDGMENT SHALL BE ENTERED IN FAVOR OF PLAINTIFF
AWARDING BENEFITS; AND (3) THIS CASE IS CLOSED**

This is a Social Security disability benefits appeal. At issue is whether the

administrative law judge ("ALJ") erred in finding the Plaintiff "not disabled" and

therefore unentitled to disability insurance benefits ("DIB") and Supplemental Security

Income ("SSI"). (*See* Administrative Transcript ("Tr.") (Tr. 34) (ALJ's decision)).

**I.**

Plaintiff filed applications for DIB and SSI on June 25, 2002, alleging disability

since January 1, 2002. (Tr. 63, 489). Plaintiff alleges disability due to diarrhea,

abdominal pain, and cramping related to irritable bowel syndrome. (Tr. 515-16, 911, 937-

93).[1]

---

[1]    Plaintiff also complains of other severe and non-severe impairments including:
diabetes, carpal tunnel syndrome, diabetic peripheral neuropathy, degenerative disc disease in the
cervical spine, a history of asthma with intermittent exacerbations, obesity (5'6 ½ and 216
pounds), dysthymia, chest pain, kidney pain, and urinary tract infections. (*See* Doc. 9, fn 1).

Plaintiff's claim was denied initially and on reconsideration. (Tr. 46, 51, 493, 497). Plaintiff timely filed a request for a hearing before an ALJ. (Tr. 54). A hearing was held on October 17, 2006. (Tr. 508-42). The ALJ denied the claims in a decision dated February 10, 2006, finding that Plaintiff could perform "other work." (Tr. 15-34). Plaintiff requested review of the decision by the Appeals Counsel. (Tr. 15). The Appeals Council denied review, making the ALJ's decision the Commissioner's final decision. (Tr. 6-9). Plaintiff then commenced an action in federal court. In a decision dated August 14, 2008, this Court found that the ALJ substituted his own lay understanding of the medical record in contradiction to the opinion of the treating specialist and treating physician. (Tr. 588). Magistrate Judge Ovington recommended remand, and Judge Rose entered an Order to that effect. (*See* Case No. 3:07cv180).[2]

On remand, the ALJ held hearings in February 2009 and April 2010, and heard testimony from Plaintiff, a medical expert, and a vocational expert. (Tr. 905-30, 931-63). In a decision dated July 8, 2010, the ALJ again denied the claims. (Tr. 550-65). The ALJ found that given Plaintiff's vocational profile and RFC[3] for a range of light work, she could perform a significant number of jobs in the economy. (Tr. 553-65). The Appeals

---

[2]     On remand, the ALJ was directed to re-evaluate the medical source opinions of record. (Tr. 592).

[3]     A claimant's residual functional capacity ("RFC") is an assessment of "the most [she] can still do despite [her] limitations." 20 CFR § 416.945(a)(1). The regulations describe that a claimant may have both "exertional" and "nonexertional" limitations on her ability to work. *Id.* at § 404.1569a(a).

Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. (Tr. 543-45). Plaintiff then commenced another action in this Court for judicial review.

At the time of the ALJ's decision, Plaintiff was 43 years old, a younger person under the laws of Social Security.[4] (Tr. 564). Plaintiff has a high school education. (*Id.*) She worked in the past primarily as a catalog sales clerk (customer order clerk) and convenience store clerk (cashier). (Tr. 538, 956). Plaintiff stopped working as a customer order clerk on December 4, 2003, and the ALJ found that Plaintiff could not return to her past work. (Tr. 512-13, 564).

The ALJ's "Findings," which represent the rationale of her decision, were as follows:

1. The claimant met the disability insured status requirements of the Act on January 1, 2002, the date she stated she became unable to work, and continues to satisfy those requirements through June 2008.

2. The claimant has not engaged in substantial gainful activity since the alleged onset date.

3. The claimant has "severe" impairments of mild obstructive and restrictive lung disease; insulin-dependent diabetes not always well controlled; irritable bowel syndrome; dysthymia,[5] and psychological factors affecting physical condition, but she does not have an impairment or combination of impairments listed in, or medically equal to one listed in, Appendix 1, Subpart P, Regulations No. 4.

---

[4] 20 C.F.R. §§ 404.1563, 416.963.

[5] Dysthymia is a chronic type of depression in which a person's moods are regularly low.

-3-

4.    The claimant's subjective complaints are not totally supported by the evidence of record.

5.    The claimant can lift up to fifty pounds occasionally and up to twenty five pounds frequently; she must avoid climbing ladders, working at heights, or operating hazardous machinery; she must have a clean-air, temperature-controlled environment; easy access to a bathroom; and she is limited to low stress jobs that are fast paced or have production quotas (dealing with the public is not precluded) (20 CFR 404.1545 and 416.945).

6.    The claimant can perform her past relevant work as a catalog sales clerk.

7.    The claimant's residual functional capacity for the full range of medium work is reduced by the functional limitations imposed by her impairments as described in Finding No. 5.

8.    The claimant is a "younger individual" (20 CFR 404.1563 and 416.963).

9.    The claimant has a high school education (20 CFR 404.1564 and 416.964).

10.   Transferability of work skills is not an issue in this case (for purposes of the additional, step-five finding only).

11.   Based on an exertional capacity for medium work, and the claimant's age, education, and work experience, section 404.1569 of Regulations No. 4, section 416.969 of Regulations No. 16, and Rules 203.28 through 203.31, Table No. 3, Appendix 2, Subpart P, Regulations No. 4, would direct a conclusion of "not disabled," regardless of whether any acquired skills are transferable.

12.   Although the claimant's functional limitations do not allow her to perform the full range of medium work, using the above-cited rule as a framework for decisionmaking there is a significant number of jobs in the regional economy which she can perform (in addition to her past relevant work), namely: 16,000 unskilled, medium exertion jobs such as sandwich maker, patient transporter, and dining room attendant; 17,000 unskilled, light exertional jobs such as office helper, photocopy machine operator, and informational clerk; and 3,500 unskilled sedentary exertion jobs such as type copy examiner, charge account clerk, and microfilm document preparer. A proportionate number of such jobs exist in the national economy as well.

13. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR 404.1520(f) and (g) and 416.920(f) and (g)).

(Tr. 33-34).

In sum, the ALJ concluded that Plaintiff was not under a disability as defined by the Social Security Regulations and was therefore not entitled to disability insurance benefits. (Tr. 34).

On appeal, Plaintiff argues that: (1) the ALJ erred in failing to consider Plaintiff's need for access to a restroom in establishing her RFC; and (2) the ALJ erred in her evaluation of medical source opinion.[6] The Court will address these arguments together, as they are interrelated.

## II.

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). In performing this review, the Court considers the record as a whole. *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon

---

[6]    Plaintiff does not challenge the ALJ's RFC findings as it relates to her other conditions and, therefore, she has waived her right to raise those issues. *Griffith v. Callahan,* 138 F.3d 1150, 1154 (7th Cir. 1998) (arguments not raised to the district court are waived).

which the ALJ could have found plaintiff disabled.  As the Sixth Circuit has explained:

> "The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.  The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts.  If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm."

*Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

The claimant bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits.  20 C.F.R. § 404.1512(a).  That is, she must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job in the national economy.  42 U.S.C. § 423(d)(1)(A).

### A.

The record reflects that:

Plaintiff began reporting right-sided abdominal pain, diarrhea, nausea, and vomiting to her long-time primary care physician, Joan C. Cooper, M.D., in March, 2001. (Tr. 350, 352, 359-60).  Over time, Plaintiff's symptoms worsened.  An April 2, 2002 CT of the abdomen "non-specific" findings included, enlarged lymph nodes attached to the abdomen wall, and "inflammatory like stranding in the central mesentery."  (Tr. 296-97). Plaintiff was ultimately referred to Michael W. Gorsky, M.D., a gastroenterologist, due to symptoms of bowel incontinence.  (Tr. 193).

Dr. Gorsky first evaluated Plaintiff on June 20, 2002. (Tr. 261-62). At that time, Plaintiff reported a recent and marked worsening of abdominal pain and cramps, rectal bleeding, and intermittent nausea and vomiting. She also reported fecal incontinence. (Tr. 261). She had at least six bowel movements a day, usually with blood. (Tr. 261, 342). On examination, Dr. Gorsky found diffuse and mild abdominal tenderness, a diffuse maculopapular rash, and anxiety. (*Id.*) He thought there was a "possibility" that Plaintiff had diabetic gastroparesis, "but her crampy abdominal pain and bloody diarrhea raise the possibility of inflammatory bowel disease." (Tr. 262). Plaintiff vomited during the appointment. (Tr. 261). Plaintiff looked so ill that Dr. Gorsky sent her to the hospital "to control her blood sugar, give her IV fluid, and have her undergo endoscopic evaluation." (Tr. 262). Further testing (esophogastroduodenoscopy "EGD," colonoscopy, lab tests), while showing mild problems, did not shed any further light on the cause of her problems. (Tr. 202-14).

At a follow up appointment on July 10, 2002, Dr. Gorsky thought Plaintiff had "diabetic gastroparesis and irritable bowel syndrome." (Tr. 257). Medication helped the nausea and vomiting, but Plaintiff's diarrhea continued. (Tr. 256-57). In March 2003, Dr. Gorsky continued to suspect that Plaintiff had irritable bowel syndrome and added a medication for cramping. (Tr. 256). He attributed Plaintiff's nausea to diabetic gastroparesis. (Tr. 387). Dr. Gorsky and Dr. Cooper regularly noted abdominal tenderness upon examination. (Tr. 316, 387, 396, 420, 427). Through October 2004, Plaintiff regularly reported varying degrees of nausea, diarrhea, abdominal pain, and

-7-

cramping. (Tr. 316, 321-22, 334, 337,388, 389, 411, 430-31). In October, 2004, upper abdominal pain radiated into her neck. (Tr. 411). In response, Dr. Gorsky ordered a follow-up colonoscopy with biopsies. The October 8, 2004 study showed nonspecific inflammatory changes of the terminal ileum[7] and internal hemorrhoids. (Tr. 410).

Dr. Cooper prepared a narrative report on December 18, 2003. (Tr. 304). Dr. Cooper noted Plaintiff's "multiple medical problems," including insulin dependant diabetes, gastroesophageal reflux disease, asthma, irritable bowel syndrome, gastroparesis, psoriasis, and rosacea. Most significantly, Plaintiff had frequent asthma exacerbations, gastroparesis, and irritable bowel syndrome causing diarrhea and occasional fecal incontinence. Dr. Cooper did "not believe that [Plaintiff] is capable of any sustained regular employment." (*Id.*) In a basic medical form, Dr. Cooper stated Plaintiff was "unemployable" for at least 12 months. (Tr. 302-03). She noted that Plaintiff's frequent diarrhea required close proximity to a restroom, with the ability to leave the work area. Dr. Cooper also noted that Plaintiff would also require regular breaks to check blood sugars and to eat. Finally, Plaintiff had "frequent exacerbation[s] of medical problems requiring absence from work." (Tr. 303).

On May 6, 2005, Dr. Gorsky completed a medical assessment of ability to do work-related activities. (Tr. 433-436). He noted that Plaintiff should not lift more than 10-15 pounds occasionally and five pounds frequently, as heavier weights could cause

---

[7]    The ileum is the final section of the small intestine and its function is mainly to absorb vitamin B12 and bile salts.

bowel incontinence. (Tr. 433-34). Dr. Gorsky thought that Plaintiff's medications would impair her ability to work at heights, around moving machinery, chemicals, temperature extremes, fumes, and humidity. (Tr. 435A). He noted that Plaintiff "needs frequent bathroom breaks - average twice/hour - needs open access to bathrooms – cannot wait for scheduled breaks." (*Id.*) He recommended that Plaintiff work not more than four hours a day. (Tr. 436).

In a letter dated May 17, 2006, Dr. Gorsky elaborated further on Plaintiff's condition. He noted that there was no "objective" way to assess the number of bowel movements a patient had other than by patient report. Further, Dr. Gorsky noted that the fact that Plaintiff weighed over 200 pounds and was not losing weight was not evidence of contradicting the existence of a diarrheal illness. "No one ever said she had a malabsorption problem. She absorbs nutrients well and, therefore, even if she had severe diarrhea, it would not make her lose weight." (Tr. 623). Dr. Gorsky noted that "[t]he combination of a diarrhea predominant irritable bowel and a weak or poorly functioning anal sphincter would lead to frequent incontinent episodes . . . . Because of the cramps associated with diarrhea predominant irritable bowel syndrome, she could only hold it for so long before having to go to the bathroom."[8] (*Id.*)

Fred Fishman, M.D. testified at the hearing in February 2009. (Tr. 911-30). He

---

[8]     Plaintiff described an episode when she last worked as a catalogue sales clerk where she was on the phone with someone taking an order and had to rush to the bathroom, leaving the client on hold. She did not make it to the bathroom and had to leave work. She testified that she was asked to leave the job due to that episode and her frequency of bathroom use. (Tr. 950-51).

agreed that Plaintiff had irritable bowel syndrome "IBS." (Tr. 911).

> The irritable bowel is a functional disorder of the gastrointestinal tract and usually manifests itself with diarrhea, constipation, or alternating diarrhea and constipation. A thorough, standard workup usually finds no chemical or anatomic disorder, and it's often related to stress. It's a real syndrome, and the diagnosis is made by exclusion, not by inclusions. She's had a thorough evaluation by a gastroenterologist, and so I can be comfortable in saying that, indeed, she does have irritable bowel syndrome.

(Tr. 912). Dr. Fishman also confirmed that a physician could not objectively verify the extent of diarrhea and had to rely on patient report. (Tr. 913-14). Dr. Fishman testified that large amounts of diarrhea would result in weight loss and dehydration but a person could just have lots of small, loose frequent stool with cramps without such a loss. (Tr. 914-15). Dr. Fishman noted that it was somewhat unusual that Plaintiff's condition could not be controlled with medication, but he felt that Plaintiff's gastroenterologist had done a "reasonably good job" treating her. "I'm not trying to second guess or suggest anything else, but I'm just reporting to you that what he is saying is consistent – what the patient's saying and what the records show are consistent with that diagnosis." (Tr. 915). Dr. Fishman stated that he put a lot of weight on Treating Specialist Gorsky's report, noting "it's coming from a treating doctor, who I think is reasonably well trained." (Tr. 917).

Dr. Fishman indicated that the primary vocational issue for a person with IBS is accessibility to a restroom, and he felt that the bottom line was whether she could get to the bathroom twice an hour as indicated by Dr. Gorsky. (Tr. 918). Dr. Fishman indicated the pattern of bathroom needs (whether the person had four bowel movements in a row or

whether the need was spread through the day) would clarify when a bathroom was needed. (Tr. 919). While initially stating that lifting or carrying would not necessarily result in stool continence (Tr. 917), Dr. Fishman later acknowledged that trying to lift something heavy could cause a strain on stool continence, but he did not think 10 pounds would result in that much straining. (Tr. 925). On a bad day, 20 pounds could be a problem. (Tr. 926).

At the hearing in February 2009, Plaintiff testified that she continued to have diarrhea on a regular basis. (Tr. 910). On a typical day, she had diarrhea about four times a day. (*Id.*) On severe days, she went to the bathroom eight or more times in a day. (*Id.*) Some days she could not even leave the house, because when she had to go to the bathroom, she had to go immediately.[9] (*Id.*) Her medications helped, but did not eliminate her symptoms. (*Id.*)

At the hearing in August 2010, Plaintiff testified that she had two or three good days per week, where she only had a problem with diarrhea three or four times a day. (Tr. 938). On a bad day, she had to go to the bathroom about ten times. (*Id.*) Sometimes, she made several trips in succession. (*Id.*) "I don't want to make it seem like every hour on the hour I'm having to run straight to the bathroom. There's times I can run to the bathroom four to six times in just that one hour and have five more hours and I'm not

---

[9]  "On severe days I am constantly running up and down the stairs to the bathroom anywhere from eight to more times a day.  Some days I can't even leave the house, because when I have to go, I have to go immediately, and if there's no restroom facility, there's been times I've had to go home because I didn't make it to the bathroom.  It causes severe cramping." (Tr. 910).

-11-

running to the bathroom, but I'm still in abdominal pain." (Tr. 939). She affirmed that her restroom needs are variable and hard to predict. (*Id.*)[10]

Plaintiff argues that the ALJ did not properly consider her need to have unscheduled access to a bathroom due to her frequent episodes of diarrhea. (Doc. 9 at 13-18). The ALJ discounted Plaintiff's allegations regarding the frequency with which she claimed that she needed to use the bathroom based on alleged inconsistent evidence in the record. (Tr. 562). Specifically, a series of medical records that fail to note any bowel incontinence. (*See, e.g.*, 194, 278-79, 463, 639, 698, 680, 772, 821). Furthermore, the ALJ cites numerous treatment notes during which Plaintiff complained of various conditions, but either did not mention diarrhea as a problem or, if she mentioned diarrhea, she did not indicate the frequency with which it occurred. (*See e.g.* 317-18, 321, 324, 332, 390, 394, 699-706, 711, 742-50). Based on such evidence, the ALJ concluded that Plaintiff's diarrhea and/or bowel incontinence did not rise to the level of frequency which would preclude Plaintiff from performing work. The Court disagrees, noting that the record is replete with evidence supporting Plaintiff's contention that she experienced frequent and uncontrollable diarrhea.

---

[10] At the hearing in 2005, Plaintiff testified that while medication helped control her nausea, vomiting and abdominal pain, it only slowed down her diarrhea. (Tr. 516). At that time, she continued to struggle with frequent bowel movements, six to eight times on a "normal day," and more than ten on a bad day. (Tr. 515). In fact, at least twice a week she reported that she had to "drop everything" and run to the bathroom. (Tr. 534). Approximately three to four times a year she had had accidents while in public. (Tr. 535).

The need for frequent restroom access has been classified by other courts and ALJs as a nonexertional impairment. *Dambrowski v. Astrue*, 590 F. Supp.2d 579, 584 (S.D.N.Y. 2008) ("[P]laintiff had an obvious nonexertional impairment that he claimed prevented him from working: his need to use the bathroom with unusual frequency."). A nonexertional impairment is a limitation "imposed by the claimant's impairments that affect her ability to meet the requirements of jobs other than strength demands, and includes manipulative impairments and pain." *Sobolewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997) (citing 20 C.F.R. 404.1569a(a), (c)). In the instant case, Plaintiff has an obvious nonexertional impairment that she claims prevents her from working: her need to use the bathroom with unusual frequency. Because the Plaintiff claimed a significant nonexertional impairment, the ALJ was required to "introduce the testimony of a vocational expert that jobs exist in the economy which claimant can obtain and perform." *Bapp v. Bowen*, 802 F.2d 601, 603 (2nd Cir. 1986).

At the hearing in April 2010, a vocational expert was asked to consider a person of Plaintiff's age, education, and work experience who was limited to light work exertionally with the following limitations: no more than frequent fine fingering and handling; unskilled and low in stress (defined as no assembly line production quotas and not fast-paced); was performed in a clean air environment away from hazards; access to a restroom. (Tr. 957-58). The vocational expert testified that such a person could still perform a number of sedentary and light positions. (*Id.*) However, these jobs would not a permit a person to have unpredictable break times. (Tr. 959). Even if the number of

-13-

breaks did not exceed the number of breaks allowed, unscheduled breaks would be an issue, depending on the impact on overall performance and productivity. (Tr. 959-60). "Based upon the frequency and duration of using a restroom is going to have an impact on overall performance and productivity. So, you would probably be subject to disciplinary action and subject to termination." (Tr. 960). This testimony was consistent with the testimony of the vocational exert testifying in 2005 who noted that if a person took "unscheduled leaves from [their] workstation or work duties," they would "probably not be able to maintain employment." (Tr. 540).

At the hearing, Plaintiff's attorney asked the vocational expert ("VE") the impact on the available jobs if the frequency and duration with which the individual had to use the bathroom caused the individual to be off task or not perform job duties for about one third of the workday. (Tr. 961). The VE testified that the individual would not be able to perform the identified jobs. (*Id.*) In the absence of any other evidence in the record on the existence of jobs that a person with Plaintiff's capacities could perform, the VE's opinion is entitled to great weight.

Still, Defendant argues that the ALJ "reasonably discounted" Plaintiff's allegations regarding the frequency with which she needed to use the restroom. (Doc. 12 at 10). The issue, however, is not Plaintiff's credibility, but rather the ALJ's erroneous evaluation of the opinions of the treating physicians and medical expert. (Doc. 9 at 14-18). Although the ALJ considered the opinions of Plaintiff's two treating doctors, she gave them limited

-14-

weight.[11]   Defendant argues that the ALJ appropriately evaluated the opinions of Dr. Gorsky and Dr. Cooper, the treating specialist and primary care physician.  For example, Defendant notes that the ALJ noted Dr. Gorsky's statement that Plaintiff would need a bathroom break twice an hour "was beyond what Plaintiff alleged."  (*Id.*, citing Tr. 563). Like the ALJ before her, the ALJ here misstates the opinion of Dr. Gorsky.  Dr. Gorsky did not state that Plaintiff would need to use the restroom twice an hour.  He stated she would need to use the restroom *on average* twice an hour.  Further, his primary concern was not the frequency of restroom access but that Plaintiff had "open access to bathroom – cannot wait for scheduled breaks."  (Tr. 435A).  This is certainly consistent with Plaintiff's testimony, who testified to soiling herself in the past when she did not have immediate access to a bathroom.  (Tr. 535).

Further, Dr. Gorsky's opinion was not inconsistent with that of Dr. Fishman, the medical expert who testified at the hearing.  For example, Dr. Fishman specifically noted that the symptoms Plaintiff described were consistent with irritable bowel syndrome (IBS).  "I'm not trying to second guess or suggest anything else, but I'm just reporting to you that what he [Dr. Gorsky] is saying is consistent – what the patient's saying and what the records show are consistent with that diagnosis."  (Tr. 915).  Defendant argues that Dr. Fishman noted that credibility was a significant part of establishing the diagnosis of IBS, because it was not something that could be verified.  (Doc. 12 at 13, citing Tr. 914).

---

[11]     This case was originally remanded for further evaluation of these doctors' opinions. (Tr. 562).

-15-

Dr. Fishman did not question the diagnosis of IBS. Defendant notes that Dr. Fishman testified that symptoms of IBS were most often intermittent, not usually as severe as Plaintiff's, and usually controllable. (Doc. 12 at 13, citing Tr. 913). While this is the usual course, Dr. Fishman did not suggest that Plaintiff's symptoms were not real. He agreed that the treating specialist had tried her on medications and had done a reasonably good job. (Tr. 915). Dr. Fishman specifically noted that he put a lot of weight on the reports of Dr. Gorsky, a treating specialist whom he felt was "reasonably well trained." (Tr. 917).

Essentially, the ALJ creates a conflict between medical sources that simply does not exist. Dr. Gorsky noted that Plaintiff "needs frequent bathroom breaks - average twice/hour - needs open access to bathrooms – cannot wait for scheduled breaks." (Tr. 435A). Dr. Gorsky elaborated: "The combination of a diarrhea predominant irritable bowel and a weak or poorly functioning anal sphincter would lead to frequent incontinent episodes . . . . Because of the cramps associated with diarrhea predominant irritable bowel syndrome, she could only hold it for so long before having to go to the bathroom." (Tr. 623). Dr. Fishman indicated that the primary vocational issue for a person with IBS is accessibility to a restroom, and he felt that the bottom line was whether she could get to the bathroom twice an hour as indicated by Dr. Gorsky. (Tr. 918). Dr. Cooper also noted that Plaintiff's irritable bowel syndrome caused diarrhea and fecal incontinence. Dr. Cooper indicated that Plaintiff's frequent diarrhea required close proximity to a restroom, with the ability to leave the work area. (Tr. 303). There is no evidence that Plaintiff

-16-

could perform the jobs identified by the vocational expert if she were limited in the manner described by the medical sources.

These opinions point to a deficiency in the ALJ's finding of residual functional capacity. The ALJ found that Plaintiff would need ready access to a bathroom, but she did not discuss the frequency with which Plaintiff needed such access, or the urgency with which Plaintiff needed such access. Specifically, the VE indicated that the jobs he identified would not a permit a person to have unpredictable break times. (Tr. 959). Even if the number of breaks did not exceed the number of breaks allowed, *unscheduled* breaks would be an issue, depending on the impact on overall performance and productivity. (Tr. 959-60). "Based upon the frequency and duration of using a restroom is going to have an impact on overall performance and productivity. So, you would probably be subject to disciplinary action and subject to termination." (Tr. 960). This testimony was consistent with the testimony of the vocational exert testifying in 2005 who noted that if a person took "unscheduled leaves from [their] workstation or work duties," they would "probably not be able to maintain employment." (Tr. 540). In failing to specify the urgency of Plaintiff's need for a bathroom, the ALJ essentially left her decision beyond meaningful appellate review.

Accordingly, the Court finds that the ALJ improperly weighed the medical evidence by failing to give controlling weight to the treating physicians. The ALJ's faulty interpretation of the physicians' assessments does not constitute *substantial evidence* so as to overcome the findings of the treating physicians. Therefore, the proof of disability

-17-

is strong and opposing evidence is lacking in substance. A remand in this matter would merely involve the presentation of cumulative evidence and would serve no useful purpose. *Felisky v. Bowen,* 35 F.3d 1027, 1041 (6th Cir. 1994).

### III.

When, as here, the non-disability determination is not supported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing or to reverse and order benefits granted. The Court has authority to affirm, modify or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan,* 501 U.S. 89, 100 (1991).

Generally, benefits may be awarded immediately "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.,* 17 F.3d 171, 176 (6th Cir. 1994); *see also Abbott v. Sullivan,* 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Sec'y of Health & Human Servs.,* 820 F.2d 777, 782 (6th Cir. 1987).

The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *Faucher,* 17 F.3d at 176; *see also Felisky,* 35 F.3d at 1041; *Mowery v. Heckler,* 772 F.2d 966, 973 (6th Cir. 1985). Such is the case here.

Here proof of disability is overwhelming and remand will serve no purpose other than delay. As fully recited herein, in view of the extensive medical record of evidence of

disability, the credible and controlling findings and opinions of treating physicians, and the opinion of the vocational expert that no jobs exist based on Plaintiff's limitations, proof of disability is overwhelming.

## IT IS THEREFORE ORDERED THAT:

The decision of the Commissioner, that Plaintiff was not entitled to a disability insurance benefits and supplemental security income beginning January 1, 2002, is hereby found to be **NOT SUPPORTED BY SUBSTANTIAL EVIDENCE**, and it is **REVERSED**; and this matter is **REMANDED** to the ALJ for an immediate award of benefits; and, as no further matters remain pending for the Court's review, this case is **CLOSED.**

Date: 11/22/11

Timothy S. Black
United States District Judge